UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DOREEN LINZE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12 CV 1113 CDP |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

This is an action for judicial review of the Commissioner's decision denying Doreen Linze's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 405(g), *et seq*. Judicial review of the Commissioner's final decision under Title II is available under Section 205(g) of the Act. 42 U.S.C. § 405(g). Linze claims she is disabled because of arthritis and migraines. The relevant time period for consideration of Linze's claim is from February 23, 2005, the amended onset date, through December 31, 2007, the date

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. As such, she should be substituted for Michael J. Astrue as the defendant in this suit. Fed. R. Civ. P. 25(d).

her insured status expired.[2]  Because the ALJ's decision denying benefits was supported by substantial evidence, I will affirm the decision of the Commissioner.

## Procedural History

On November 23, 2008, Doreen Linze filed protectively for Disability Insurance Benefits, alleging disability beginning February 23, 2005, as amended.[3] Her last insured date was December 31, 2007.  Following a hearing on January 11, 2011, the Administrative Law Judge (ALJ) issued a decision finding that Linze was not disabled during the insured period.  The Appeals Council denied Linze's request for review on April 25, 2012.  The ALJ's decision thus stands as the final decision of the Commissioner.

## Evidence before the ALJ

Linze was forty-seven years old at the time of the ALJ's decision.  She graduated from high school and has one year of business college education.  Linze most recently was employed in 2001 as a product development manager in the

---

[2] To meet the requirements for insured status, an individual is required to have 20 quarters of coverage in a 40–quarter period ending with the first quarter of disability.  *See* 42 U.S.C. §§ 416(i)(3)(B) & 423(c)(1)(B); 20 C.F.R. § 404.130.  To be entitled to benefits under Title II, Linze must establish that she was disabled prior to the date her insured status expired.

[3] Linze cited an onset date of December 31, 2002.  However, Linze's claim for disability benefits through February 23, 2005 was denied in prior proceedings and is now res judicata.

pharmaceutical industry. She claims inability to work because of arthritis in her feet, hands, and wrists, as well as migraine headaches and depression.[4]

*Medical Records*

On March 5, 2005, Linze's primary care physician, Dr. Kenneth Smith, diagnosed her with rheumatoid arthritis and chronic headaches. Medical records as of April 25, 2005 showed that Linze's migraines had improved. In September 2006, her rheumatoid arthritis was reported as "stable" with no definite evidence of inflammatory arthritis; Linze was getting by on over-the-counter medications. Her migraines were also reported as stable. In March of 2007, Linze denied having any swelling or red joints and had a normal sedimentation rate at 22mm/hr.[5] She complained primarily of pain in her knees and hips, and her migraines were stable using over-the-counter medications. As of August 2007, Linze complained of worsening joint pain, primarily in her feet. Dr. Smith noted that she had positive rheumatoid factor. X-rays of her hands showed minimal symmetrical cartilage space thinning, which was indicative of early osteo- or rheumatoid arthritis. X-

---

[4] Although Linze wrote depression as a cause of her disability on the claim form, she did not mention depression when asked about her impairments during the ALJ's hearing. Moreover, her medical records do not mention depression during the relevant years.

[5] Sedimentation rate is a measure of the distance red blood cells fall in an hour and is a test for the presence of inflammatory activity, which can cause cells to clump together, increasing the speed with which the cells fall. Greater distances indicate greater inflammatory response. The normal ranges for women are 0–29 mm/hr. *Pinegar v. Astrue*, No. 4:10-CV-643 CEJ, 2011 WL 2621670, at *3 n.13 (E.D. Mo. July 5, 2011) (citations omitted).

rays of her feet showed no radiographic evidence of rheumatoid arthritis. Her sedimentation rate was high at 69.

On September 18, 2008, Linze reported no joint or muscle pain, and her doctor noted that her rheumatoid arthritis was under adequate control through Plaquenil therapy. She continued to complain of migraines. On June 29, 2009, Linze's arthritic pain occurred primarily in the forefeet with minor hand symptoms. Although she reported difficulty walking, Linze had "no great complaint" as to pain in her knees, wrists, or elbows. She continued to complain of migraine headaches. As of December 3, 2009, although she did not experience weakness in the extremities and had normal range of motion, Linze reported much discomfort when walking. Most of Linze's pain occurred in her forefeet, which were tender to the touch. Dr. Smith wrote that she was unable to complete required work activities, described her as "fairly disabled," and opined that she "may be a candidate for disability at some point in the future." Dr. Richard Brasington, a rheumatologist, wrote in support of Linze's disability claim on September 17, 2010 and stated that he had seen Linze in January 2010 and that it was clear at that time that she was permanently and totally disabled.

*Testimony*

The ALJ heard testimony from Linze as well as from a vocational expert. Linze stated that she had one year of business college background and that she was

last employed as a product development manager at a pharmaceutical company. Prior to her two years in that position, she worked in quality assurance, which required lifting up to 50 pounds daily. Her job as a product development manager entailed mostly paperwork.

Linze stated that her symptoms began in 1996 as migrating joint pains that would shift between her right and left hip and shoulders. She last worked in 2001, and has not looked for other work. She stated that her arthritic symptoms have gotten worse: increasing in duration, intensity, and frequency. Her pains now occur in her shoulders, hips, feet, ankles, knees, wrists, jaw, and neck. She also stated that she has migraine headaches and untreated fibromyalgia.

Linze testified that, at the time of her hearing, she could walk for 100 feet before needing to sit, stand for 15 minutes, and sit for 15–20 minutes before needing to move. She could no lift no more than 5 pounds and could not drive for more than short distances. Linze no longer goes to church, restaurants, or movies.

The ALJ proffered to the vocational expert a hypothetical individual: a 41-year-old person with 13 years of education, some past work experience, and capable of performing a full range of light work. The vocational expert testified that such a person could work as a product developer as the job is listed in the Dictionary of Occupational Titles (DOT) and performed in the national economy. Such an individual would also be able to work in quality assurance as the job is

listed in the DOT and performed in the national economy but not as Linze described the position. The expert also testified that a fully sedentary person with the other qualifications could perform the quality assurance job as performed in the national economy and listed under the DOT but could not perform the product developer position.

## Legal Standards

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome. *Id.* Nor may the court reverse because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)). Where the Commissioner's findings represent one of two inconsistent conclusions that may

reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (internal citation omitted).

To determine whether the decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

> (1) credibility findings made by the Administrative Law Judge;
> (2) the claimant's age, education, background, and work history;
> (3) medical evidence from treating and consulting physicians;
> (4) the claimant's subjective complaints relating to exertional and nonexertional impairments;
> (5) any corroboration by third parties of the claimant's impairments; and
> (6) testimony of vocational experts, when required, which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(b).

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 1520(C). If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the burden of proof shifts and the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  *See e.g.*, *Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include: "(1) the claimant's daily activities; (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain; (3) any precipitating or aggravating factors; (4) the dosage, effectiveness and side effects of any medication; and (5) the claimant's functional restrictions." *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (citing *Polaski*, 739 F.2d at 1322).  When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  The ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

**The ALJ's Findings**

On January 11, 2011, the ALJ issued his decision that Linze was not disabled.  In reaching this decision, the ALJ followed the five-step sequential evaluation process, noting at step one that Linze had not engaged in substantial gainful activity during the period from her alleged onset date of December 31, 2002 through her date last insured of December 31, 2007.

Proceeding to step two, the ALJ found that Linze had severe impairments of positive rheumatoid factor and minimal degenerative changes of the hands.  The ALJ also found that Linze had a number of other non-severe impairments.  One such impairment was hypothyroidism; however, in September 2006, Linze had denied symptoms related to the impairment.  The ALJ also found that the medical records indicated that Linze had generalized anxiety disorder and mild major affective disorder, and that there was a question as to whether she had fibromyalgia.  The ALJ determined that these additional impairments did not result in more than minimal limitations to her functioning and, thus, were not severe.

At step three, the ALJ concluded that Linze did not have an impairment or combination of impairments that met or exceeded one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ specifically found that Linze did not meet the criteria for inflammatory arthritis.

The ALJ concluded that on the date last insured, Linze had a residual functional capacity (RFC) to perform the full range of light work and could lift 20 pounds occasionally, lift 10 pounds frequently, could stand or walk six out of an eight-hour workday, and could sit six hours out of an eight-hour workday.

In reaching his RFC determination, the ALJ noted that Linze's medical records reflected a worsening of her symptoms after the date she was last insured. The ALJ found that although during the insured period Linze suffered some of the symptoms to which she testified, Linze's statements as to the intensity, persistence, and limiting effects of her symptoms were not credible as to the date last insured.

The ALJ determined that through the date last insured, Linze was able to perform her past relevant work as it is described in the DOT and denied her claim.

## Discussion

When reviewing a denial of Social Security benefits, a court cannot reverse an ALJ's decision simply because the court may have reached a different outcome, or because substantial evidence might support a different outcome. *Jones ex rel. Morris v. Barnhard*, 315 F.3d 974, 977 (8th Cir. 2003); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Instead, the court's task is a narrow one: to determine whether there is substantial evidence on the record as a whole to support the ALJ's decision. 42 U.S.C. § 405(g); *Estes v. Barnhard*, 275 F.3d 722, 724 (8th Cir. 2002). On appeal, Linze raises several issues. First, she claims that the ALJ failed

to find that her rheumatoid arthritis and migraine headaches were severe impairments.  Second, Linze argues that the ALJ's RFC determination was deficient because it was not supported by substantial evidence in the record from her treating physicians, it included impermissibly vague limitations, and it did not consider her rheumatoid arthritis or migraine headaches.  Finally, Linze alleges that the ALJ's determination that she could return to her past relevant work was deficient because the ALJ failed to consider actual demands of her past employment.  Because I find that the decision denying benefits was supported by substantial evidence, I will affirm the decision.

*The ALJ's Failure to Consider Rheumatoid Arthritis and Migraine Headaches*

Linze contends that the ALJ failed to consider her rheumatoid arthritis and migraine headaches when determining which of her impairments were severe.

At step two of the sequential evaluation process, an ALJ determines the medical severity of a claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Once the ALJ has determined that a severe impairment exists, he proceeds to the next step; no further action is required.  *Cf. Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir. 2007) (reframing applicant's arguments from severe impairment to RFC).  Thus, Linze's real argument is that the ALJ did not include migraine headaches and rheumatoid arthritis when determining whether she could return to her past relevant work during the date last insured.

*RFC Determination*

Linze contends that her RFC determination was improperly conducted because the ALJ failed to consider her migraine headaches and rheumatoid arthritis. The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence. *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004). The ALJ must determine a claimant's RFC based upon all relevant evidence in the record, including the individual's own description of her limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The ALJ's RFC determination – that Linze could perform the full range of light work – was supported by substantial evidence.

The record shows that the ALJ considered Linze's migraine headaches and found that they were under control before her last insured date. The ALJ noted that medical records as of April 25, 2005 showed that Linze's migraines had improved. Moreover, the record shows that as of March 26, 2007, Linze's migraines were stable using over-the-counter medications. Substantial evidence exists to support the exclusion of migraine headaches from the ALJ's disability determination.

The ALJ's analysis of Linze's rheumatoid arthritis is likewise supported by the record. Linze's medical records and her own testimony reflect a worsening of her symptoms from after December 31, 2007, the last insured date, to the present.

In August 2007, Linze stated that her pain centered primarily in her feet. However, X-rays of Linze's feet revealed no radiographic evidence of rheumatoid arthritis. In September 2008, the first record following the date last insured, Dr. Smith reported that her arthritis was being controlled by medication. Linze's foot pain returned in June of 2009, and in December of that year, Dr. Smith first noted that she was experiencing difficulty completing her daily activities and "may become a candidate for disability at some point in the future." At that time, Linze still experienced normal range of motion in her extremities and denied focal weakness.

Linze's complaints of pain are subjective and entitled to some consideration; however, the ALJ used the proper analysis and ultimately discredited her complaints. *See Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("Where adequately explained and supported, credibility findings are for the ALJ to make.") (quotation marks and citation omitted). The ALJ noted that as of September 2008, her rheumatoid arthritis was under control and that no physician cited any significant limitations in her daily activities during the insured period. Similarly, her migraine headaches were under control prior to the date last insured. The ALJ's credibility determination was proper, and substantial evidence supports the ALJ's RFC determination as of the time she was last insured.

*ALJ's Questions for the Vocational Expert*

Linze contends that the ALJ failed to pose a complete hypothetical question to the vocational expert because he did not include a function-by-function assessment that referenced all of Linze's documented impairments.  The ALJ proffered an individual with Linze's educational and work background that was capable of performing the full range of light work.  "Light work," as the 8th Circuit has noted, is defined in the regulations as: "(1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding, and turning objects." *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) (citing 20 C.F.R. § 404.1567(b)).

The ALJ described an individual who could do light work in his hypothetical question and, so, provided a functional assessment of Linze's abilities. The vocational expert's answer to that question supplies substantial evidence to support the ALJ's finding that Linze could return to her past relevant work.  *Cf. Depover v. Barnhart*, 349 F.3d 563, 568 (8th Cir. 2003) (holding a hypothetical question complete despite omitting details).

Linze also argues the ALJ erred by failing to analyze the exertional and non-exertional demands of her past employment.  The ALJ may discharge his duty to make explicit findings regarding the mental and physical demands of the

claimant's past work by referring to the specific job descriptions in the DOT that are associated to the past work.  *Young v. Astrue*, 702 F.3d 489, 490 (8th Cir. 2013).   Here, the ALJ found that Linze could perform her past relevant work as it is described in the DOT and customarily performed in the national economy. The ALJ based his finding that Linze could perform her past work upon testimony from the vocational expert, who referenced the DOT listings for product developer and quality assurance jobs.  Substantial evidence therefore supports the ALJ's finding that Linze could perform her past relevant work.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner denying benefits is **affirmed**.

A separate judgment in accord with this Memorandum and Order is entered this date.

                                        _____
                                        CATHERINE D. PERRY
                                        UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2013.